**SO ORDERED.**

**SIGNED this 5 day of January, 2018.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO. 14-00475-5-DMW** |
| **JOHN DONALD SMEDLEY, JR.** | |
| **DONNA JEANNE SMEDLEY** | **CHAPTER 13** |
| **DEBTORS** | |

| | |
|---|---|
| **ERENDIRA DIAZ ORTIZ** | |
| **PLAINTIFF** | |
| vs. | |
| | **ADVERSARY PROCEEDING NO.** |
| **JOHN DONALD SMEDLEY, JR.;** | |
| **DONNA JEANNE SMEDLEY;** | **16-00153-5-DMW** |
| **SUNTRUST BANK, successor to** | |
| **CENTRAL CAROLINA BANK; and** | |
| **TRUSTEE SERVICES OF CAROLINA,** | |
| **LLC, as Substitute Trustee under Deed of** | |
| **Trust** | |
| **DEFENDANTS** | |

## ORDER PARTIALLY GRANTING AND PARTIALLY DENYING
## MOTION FOR SUMMARY JUDGMENT

The matter before the court is the Defendant SunTrust Bank's Motion for Summary Judgment ("Summary Judgment Motion") filed by SunTrust Bank ("SunTrust")[1] on October 4, 2017 and the Opposition thereto filed by Erendira Diaz Ortiz ("Plaintiff") on October 25, 2017. The court conducted a hearing on December 7, 2017 in Raleigh, North Carolina. Elizabeth Connolly Stone, Esq. appeared for SunTrust, and Carlene McNulty, Esq. appeared for the Plaintiff. Based upon the facts presented and arguments of counsel, the court partially grants and partially denies the Summary Judgment Motion.

## BACKGROUND

In 2003, John Donald Smedley, Jr.[2] and Donna Jeanne Smedley ("Debtors") owned and resided in real property located at 10133 Joe Leach Road, Raleigh, North Carolina ("Joe Leach Property"). On or about June 2, 2003, the Debtors obtained a loan from SunTrust in the original principal amount of $38,000.00 and secured by a Deed of Trust ("June Deed of Trust") encumbering the Joe Leach Property. The June Deed of Trust was recorded with the Wake County Register of Deeds on June 23, 2003.

Also in June of 2003, the Debtors were seeking to purchase and move to a new home in Granville County, North Carolina ("Granville Property") and were negotiating with the Plaintiff to sell her the Joe Leach Property. On June 19, 2003, the Debtors and the Plaintiff entered into a Land Sales Contract ("2003 Contract") which sets forth an agreement that the Plaintiff purchase the Joe Leach Property for $100,000.00, with a down payment of $10,000.00 being paid by September 1, 2003. The balance of $90,000.00 was amortized over ten years at seven percent

---

[1] All references to SunTrust include its predecessor in interest, Central Carolina Bank.
[2] John Donald Smedley, Jr. died on September 26, 2017 during the pendency of this adversary proceeding and his underlying Chapter 13 case.

(7%) interest, requiring monthly payments in the amount of $1,044.98 beginning October 1, 2003. The Plaintiff would have exclusive possession of the Joe Leach Property during the term of the 2003 Contract, and upon completion of payments, the Debtors would convey the Joe Leach Property to the Plaintiff by North Carolina General Warranty Deed. During her possession, the Plaintiff would be responsible for payment of ad valorem taxes, with the 2003 taxes being split *pro rata* based upon the effective date of September 1, 2003. The Debtors represented to the Plaintiff that no mortgages encumbered the Joe Leach Property and agreed within the 2003 Contract that they shall do nothing to further encumber or impair the property. The 2003 Contract contains a merger clause that provides that it is the "complete agreement of the parties with all items and conditions herein set forth." The 2003 Contract was recorded with the Wake County Register of Deeds on July 8, 2003.

The 2003 Contract included a contingency that the Debtors obtain financing from the State Employees Credit Union for the purchase of the Granville Property. In August, 2003, the Debtors procured the mortgage loan and purchased the Granville Property; however, the Debtors wanted to make renovations to the Granville Property and were not ready to move out of the Joe Leach Property by September 1, 2003 as contemplated by the 2003 Contract. The Plaintiff agreed to delay commencement of possession and payments under the 2003 Contract and alleges that the parties contemplated a waiver of the $10,000.00 down payment in exchange for renovation work to be performed on the Granville Property by the Plaintiff's husband, Francisco Alvarez Mayo, and his employer, George Borbas. Mr. Borbas was a friend of the Debtors, and the Plaintiff contends that Mr. Borbas' construction company, Around the Clock Services, performed work on the Granville Property for which it was not otherwise compensated. The Defendant disputes there was an agreement that the work was intended as a substitute for the Plaintiff's down payment.

On or about October 23, 2003, the Debtors obtained a second loan from SunTrust in the amount of $104,000.00 for the purpose of financing renovations to the Granville Property. This loan was secured by a Deed of Trust ("October Deed of Trust") dated October 23, 2003 and encumbering the Joe Leach Property.[3] A portion of the proceeds from this new loan were used to satisfy the previous loan with SunTrust, and SunTrust canceled the June Deed of Trust. The October Deed of Trust was recorded with the Wake County Register of Deeds on December 16, 2003.

In the spring of 2004, the Debtors completed renovations on the Granville Property and informed the Plaintiff that they were ready to move out of the Joe Leach Property. On April 28, 2004, upon the Debtors' initiation, the parties executed a second Land Sales Contract ("2004 Contract") which reduced the purchase price to $90,000.00. The 2004 Contract did not require a down payment and the $90,000.00 purchase price was financed over ten years at seven and one-half percent (7.5%) interest, with the Plaintiff making monthly payments to the Debtors in the amount of $1,068.32 beginning on May 15, 2004 and continuing through April, 2014. Upon receipt of the final payment, the Debtors would deed the Joe Leach Property to the Plaintiff. Other changes from the 2003 Contract were that the financing contingency was removed, and the Plaintiff's obligation to pay ad valorem taxes was delayed until 2004. The Debtors did not advise the Plaintiff of the October Deed of Trust encumbering the Joe Leach Property, and the 2004 Contract also contained an agreement by the Debtors that they would do nothing further to encumber the property. Like the 2003 Contract, the 2004 Contract contained a merger clause.

In May, 2004, the Plaintiff moved into the Joe Leach Property and commenced making payments to the Debtors in accordance with the 2004 Contract. She paid the Debtors directly each

---

[3] The Granville Property was already encumbered by the purchase money mortgage deed of trust in favor of State Employees Credit Union.

month until August, 2013, when the Debtors notified her to make payments to SunTrust. The Plaintiff complied and made subsequent payments to SunTrust through February, 2014. The Plaintiff then attempted to contact the Debtors to arrange for payment of the final two installments due under the 2004 Contract and deeding of the Joe Leach Property to her from the Debtors. The Plaintiff could not locate the Debtors and found the Granville Property vacant.

After seeking legal help, the Plaintiff discovered that the Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on January 25, 2014. The Debtors' initial schedules reflected ownership of the Joe Leach Property subject to a deed of trust lien in favor of SunTrust but did not disclose either the 2003 Contract or the 2004 Contract. The Plaintiff, who was not scheduled as a creditor or party in interest, filed a proof of claim for the amount of $116,000.00, the scheduled value of the Joe Leach Property. The Plaintiff designated her claim as secured by the Joe Leach Property and attached a copy of the 2003 Contract. SunTrust filed a proof of claim for the amount of $87,888.33 secured by the Joe Leach Property and attached a copy of a promissory note in the original amount of $104,000.00 and the October Deed of Trust.

The Debtors' Chapter 13 plan filed with their petition indicated an intent to surrender the Joe Leach Property, and the Debtors amended their schedules to disclose the 2004 Contract and their intent to reject it as an executory contract. On June 30, 2014, SunTrust moved the court for relief from the automatic stay to permit foreclosure of its interest in the Joe Leach Property. SunTrust's motion was not served upon the Plaintiff, and with no objections being filed by any other party in interest, the court routinely entered an order allowing the relief on July 24, 2014.

SunTrust, through Trustee Services of Carolina, LLC ("TSC"), substitute trustee under the October Deed of Trust, commenced foreclosure proceedings against the Joe Leach Property in the Wake County Superior Court, File Number 16-SP-1500. An order allowing sale was entered on

September 19, 2016, and thereafter, the Plaintiff initiated an action in the Wake County Superior Court, File Number 16-CVS-12143, asserting claims for relief to quiet title of the Joe Leach Property in favor of the Plaintiff, or alternatively, to impose a constructive trust upon the property granting the Plaintiff a first lien position. The Plaintiff further requested that foreclosure of the Joe Leach Property be enjoined pending resolution of these claims. The Superior Court issued a temporary restraining order on October 5, 2016, and the Plaintiff elected to have the bankruptcy court adjudicate the claims related to the Joe Leach Property.

On October 6, 2016, the Plaintiff initiated this adversary proceeding by filing a Complaint against the Debtors, SunTrust, and TSC, asserting the following claims for relief:

1. Quiet Title as to SunTrust ("Quiet Title Claim");

2. Constructive Trust as to the Joe Leach Property ("Constructive Trust Claim") (Alternative to Quiet Title Claim);

3. Fraud by the Debtors ("Fraud Claim");

4. Breach of Contract by the Debtors ("Breach of Contract Claim"); and

5. Breach of Duty of Good Faith and Fair Dealing by the Debtors ("Breach of Duty Claim").

In addition, the Complaint's prayer for relief requests the court to determine that debts arising from adjudication of the Plaintiff's claims for relief are non-dischargeable.

The Debtors moved for dismissal of the claims against them for failure to state claims upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4] On October 12, 2017, the court entered a Consent Order between the Plaintiff and the Debtors which dismisses with prejudice the Fraud Claim and finds that any liability under the Breach of

---

[4] Incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

6

Contract Claim and Breach of Duty Claim, which are not dismissed, are dischargeable.[5] In the Summary Judgment Motion which is currently before the court, SunTrust is seeking summary judgment in its favor on the Quiet Title Claim and the Constructive Trust Claim, pursuant to Rule 56 of the Federal Rules of Civil Procedure.[6]

## DISCUSSION

### Jurisdiction

This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). *See In re Gunter*, 410 B.R. 178 (Bankr. E.D.N.C. 2008), *aff'd Puls v. SunTrust Mortgage, Inc.*, Case No. 5:08-CV-369-F (E.D.N.C. Aug. 20, 2010) (holding that action to quiet title is a core proceeding, even if the subject property of the debtor has been abandoned from the estate). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

### Summary Judgment Standard of Consideration

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is *no genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). When ruling upon a motion for summary judgment, "the court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most

---

[5] The Plaintiff's Complaint was filed after the April 25, 2014 deadline for filing complaints objecting to the Debtors' discharge or the dischargeability of debts, and the Plaintiff did not obtain an extension of this deadline.

[6] Incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

7

favorable to the non-movant . . . ." *Humboldt Express, Inc. v. The Wise Co., Inc. (In re Apex Express Corp.)*, 190 F.3d 624, 633 (4th Cir. 1999) (citations omitted).

Quiet Title Claim

"Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979). The Plaintiff's action to quiet title to the Joe Leach Property is made pursuant to the North Carolina General Statutes which provide that "[a]n action may be brought by any person against another who claims an estate or interest adverse to him for the purpose of determining such adverse claims . . . . " N.C. Gen. Stat. § 41-10 (1907). An action to quiet title to realty "requires two essential elements: (1) the plaintiff must own the land in controversy, or have some estate or interest in it; and (2) the defendant must assert some claim to such land adverse to the plaintiff's title, estate, or interest." *Quinn v. Quinn*, 243 N.C. App. 374, 380, 777 S.E.2d 121, 125 (2015) (citing *New Covenant Worship Ctr. v. Wright*, 166 N.C. App. 96, 103, 601 S.E.2d 245, 250-51 (2004)). Although the Plaintiff is not the record owner of the Joe Leach Property, she has an equitable interest in the property pursuant to one or both of the 2003 Contract and 2004 Contract. *See In re Foreclosure of a Deed of Trust Given by Taylor*, 60 N.C. App. 134, 139, 298 S.E.2d 163, 166 (1982) (holding that an installment contract for the sale of real property transfers equitable title therein to the purchaser). SunTrust's lien on the Joe Leach Property created by the October Deed of Trust is certainly adverse to the Plaintiff's interest in the property; therefore, it is appropriate for the court to examine these competing interests under North Carolina law.

In North Carolina—

[n]o (i) conveyance of land, or (ii) contract to convey, or (iii) option to convey, or (iv) lease of land for more than three years shall be valid to pass any property interest as against lien creditors or purchasers for a valuable consideration from the donor, bargainer or lessor but from the time of registration thereof in the county

8

> where the land lies, or if the land is located in more than one county, then in each county where any portion of the land lies to be effective as to the land in that county. Unless otherwise stated either on the registered instrument or on a separate registered instrument duly executed by the party whose priority interest is adversely affected, (i) instruments registered in the office of the register of deeds shall have priority based on the order of registration as determined by the time of registration, and (ii) if instruments are registered simultaneously, then the instruments shall be presumed to have priority as determined by:
> (1)     The earliest document number set forth on the registered instrument.
> (2)     The sequential book and page number set forth on the registered instrument if no document number is set forth on the registered instrument.
> The presumption created by this subsection is rebuttable.

N.C. Gen. Stat. § 47-18(a) (2005). The purpose of this "pure race statute" is "to enable purchasers and encumbrancers to rely with safety on the public record concerning the status of land titles." *Hill v. Pinelawn Mem'l Park, Inc.*, 304 N.C. 159, 163, 282 S.E.2d 779, 782 (1981) (citations omitted). "One who has a contractual right to compel another to convey is, upon the recordation of the contract, accorded the same protection as a grantee in a recorded deed." *Quinn v. Thigpen*, 266 N.C. 720, 723, 147 S.E.2d 191, 193-94 (1966) (citing N.C. Gen. Stat. § 47-18) (other citations omitted).

With the cancelation of the June Deed of Trust, SunTrust's interest in the Joe Leach Property undoubtedly is effective upon recording of the October Deed of Trust, which occurred after the recording of the 2003 Contract but before execution of the 2004 Contract. The Plaintiff contends that her equitable interest in the Joe Leach Property was conveyed with the 2003 Contract and that the 2004 Contract was merely a modification of their agreement after the Debtors delayed full performance by the parties under the terms as set forth in the 2003 Contract. SunTrust counters that the 2004 Contract constitutes an entirely new agreement or novation, effectively terminating the 2003 Contract. The parties and the court agree that this issue is the determinative factor of the Plaintiff's claim to quiet title.

9

Novation requires "the substitution of a new contract for an old one which is thereby extinguished." *Zinn v. Walker*, 87 N.C. App. 325, 335, 361 S.E.2d 314, 319-20 (1987), *disc. review denied*, 321 N.C. 747, 366 S.E.2d 871 (1988) (citing *Equip. Co. v. Anders*, 265 N.C. 393, 144 S.E.2d 252 (1965); *Tomberlin v. Long*, 250 N.C. 640, 109 S.E.2d 365 (1959); *Walters v. Rogers*, 198 N.C. 210, 151 S.E. 188 (1930)). The North Carolina Supreme Court established that "[t]he essential requisites of a novation are a previous valid obligation, the agreement of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract." *Tomberlin*, 250 N.C. at 644, 109 S.E.2d at 367. Whether a novation occurs, thereby discharging or superseding a prior agreement, depends upon the parties' intention as ascertained from the new contract, the relation of the parties, and the surrounding circumstances. *Zinn*, 87 N.C. App. at 335, 361 S.E.2d at 320 (citing *Tomberlin*, *supra*). The *Zinn* court astutely cautioned that "the making of a second contract dealing with the same subject matter does not necessarily abrogate the former contract between the same parties. . . . A contract may be modified by parol or subsequent conduct of the parties." *Id.* at 336, 361 S.E.2d at 320.

In support of its position that the 2004 Contract is a novation of the 2003 Contract, SunTrust argues that neither party performed under the 2003 Contract. SunTrust explains that the Debtors did not vacate the Joe Leach Property as scheduled, the Plaintiff did not make the required down payment, and the Plaintiff did not commence monthly payments and payment of ad valorem taxes. The Plaintiff disputes this assertion and proffers that Mr. Borbas' construction work on the Granville Property was intended to fulfill the down payment requirement and thus amounts to performance under the 2003 Contract. The reduction of the purchase price from $100,000.00 to $90,000.00 in the 2004 Contract certainly suggests that the parties believed the $10,000.00 down

10

payment requirement of the 2003 Contract had been effectively satisfied. The court considers resolution of this dispute critical to its determination of whether a novation occurred.

SunTrust also asserts that the inclusion of a merger clause in the 2004 Contract establishes as a matter of law that the parties intended that contract to be a novation. The court disagrees. SunTrust is correct that a merger clause creates generally a rebuttable presumption that a writing is the final agreement of the parties and may thus cause a novation; however, "[t]he one exception to this general rule applies when giving effect to a merger clause would frustrate the parties' true intentions." *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 654, 670 S.E.2d 321, 326 (2009) (citing *Zinn*, 87 N.C. App. at 333, 361 S.E.2d at 318. The subject merger clause is standard boilerplate language which is also included in the 2003 Contract, and the court is not persuaded that the Plaintiff, who appears unsophisticated in relation to the Debtors during the parties' negotiations and agreements, intended to extinguish the recorded 2003 Contract which gave her an equitable interest in the Joe Leach Property. The Plaintiff speaks predominantly Spanish and minimal English and communicated with the Debtors through assistance from her husband and Mr. Borbas. She was asked by the Debtors to execute the 2004 Contract, which could be reasonably construed simply to modify the payment terms of the 2003 Contract in light of the parties agreement to delay transfer of possession. At this stage of the adversary proceeding with reliance upon the pleadings, it appears that any modification to the existing agreement was precipitated by and for the benefit of the Debtors.

The *Zinn* court adopted a clear and convincing standard for novation, noting that being the standard for contract modification and opining "that it is only logical that the complete eradication of a contract as by substitution or novation should require a standard of proof at least as high as that required for modification of the same contract." *Zinn*, 87 N.C. App. at 336, 361 S.E.2d at 320.

11

SunTrust has failed to establish undisputed facts supporting its contention that the 2004 Contract was a novation of the 2003 Contract, especially in light of this exacting standard. The parties dispute facts material to the determination, precluding summary judgment.

## Constructive Trust Claim

Assuming *arguendo* that SunTrust has a superior interest to the Plaintiff in the Joe Leach Property, the court will consider Plaintiff's alternative claim for the imposition of a constructive trust in her favor. The North Carolina Supreme Court defines a constructive trust as "a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder *acquired through fraud, breach of duty or some other circumstance making it inequitable* for him to retain it against the claim of the beneficiary of a constructive trust." *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970) (emphasis added) (citations omitted). "A constructive trust 'arises when one obtains the legal title to property in violation of a duty he owes to another. Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship.'" *Patterson v. Strickland*, 133 N.C. App. 510, 521, 515 S.E.2d 915, 921 (1999) (quoting *Fulp v. Fulp*, 264 N.C. 20, 22, 140 S.E.2d 708, 711 (1965)).

The Plaintiff has not alleged nor do the undisputed facts suggest that there was any sort of confidential or fiduciary relationship between the Plaintiff and SunTrust, or that SunTrust breached any duty or acted wrongly in acquiring its interest in the Joe Leach Property through the October Deed of Trust. The Debtors may have indeed acted improperly; however, they have surrendered their interest in the Joe Leach Property, effectively removing their behavior from consideration in determining the competing interests of the Plaintiff and SunTrust in the Joe Leach Property. The Debtors may be liable to the Plaintiff on the Breach of Contract Claim or Breach of Duty Claim,

but imposing a constructive trust against the interest of SunTrust is inappropriate, and SunTrust is entitled to summary judgment on the Construct Trust Claim; now therefore,

    IT IS ORDERED, ADJUDGED, AND DECREED as follows:

    1.    The Summary Judgment Motion be, and hereby is, denied as to the Quiet Title Claim;

    2.    The Summary Judgment Motion be, and hereby is, granted as to the Constructive Trust Claim; and

    3.    The Constructive Trust Claim be, and hereby is, dismissed.

**END OF DOCUMENT**